Wayne S. **MARTENEY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 5528.

United States Court of Appeals Tenth Circuit.

May 3, 1957.

Emmet A. Blaes, Wichita, Kan., (Robert G. Braden, Cecil E. Merkel, Jr., of Jochems, Sargent & Blaes, Wichita, Kan., were with him on the brief), for appellant.

David O. Walter, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., A. F. Prescott and Louise Foster, Attys., Dept of Justice, Washington, D. C., William C. Farmer, U. S. Atty., Topeka, Kan., and Kenneth M. Nohe, Asst. U. S. Atty., Wichita, Kan., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This appeal is here on stipulated facts and presents a question of the priority of a statutory lien of the United States for unpaid taxes over a claim of attorneys to the proceeds of a judgment in favor of the delinquent taxpayer whom the attorneys represented. The trial court held that the United States had a prior lien.

Beginning in 1952, Wayne S. Marteney had been represented in a series of civil and criminal cases by Jochems Sargent & Blaes, a Wichita, Kansas law firm. For these services Marteney had given the law firm his note, upon which it was agreed that as of June 1, 1955 there was a balance due of $4,-935.00. At this time there was pending a libel action in which Marteney sought damages against the United Press Association. Jochems, Sargent & Blaes represented Marteney in this action under a separate contract, in which it was agreed that the law firm should receive one-half of any recovery for their services. When the balance due on the note was determined, it was agreed between the law firm and Marteney that the balance due should be recovered from Marteney's share of any judgment which might be awarded in the libel action, and not otherwise. The promissory note was thereafter so endorsed. It is not contended by any of the parties that after the settlement the note served any purpose except to determine the attorneys' interest in the judgment. On October 29, 1955 judgment was entered in favor of Marteney in the libel action for $7,500.00. This amount, together with interest, was paid in to the Clerk of the Court.

During the year 1953, unknown to the law firm, there were unpaid assessments based upon the 1950 and 1951 income tax deficiencies of Marteney. Such tax indebtedness was represented on an assessment list received by the Director of Internal Revenue on June 18, 1953, and notice and demand was issued on June 26, 1953. The assessment date was June 29, 1953. Thereafter, on April 12, 1955, the United States filed notices of the tax lien with the Register of Deeds of Reno and Finney Counties, Kansas, and also with the Register of Deeds of Sedgwick County, Kansas, on November 4, 1955, and with the Clerk of the United States District Court at Wichita, Kansas on November 7, 1955. Marteney and his family left Finney County, Kansas in October of 1953 and moved to Meade County, Kansas, where the family continuously resided until sometime in March of 1955 when it moved to Gray County, Kansas.[1] It is the contention of the United States that under 26 U.S.C.A. § 3670, Internal Revenue Code of 1939, (26 U.S.C.A. § 6323, 1954 Code), it has a lien on the judgment and the proceeds thereof, and the claim of the attorneys is not that of a mortgagee, pledgee, purchaser, or judgment creditor, which would invalidate its lien under the provisions of § 3672, and even so, its lien notices preceded the rights of the attorneys in the judgment.

§ 3670 provides that when a person liable to pay any Federal tax neglects or refuses to pay such tax after demand, the tax becomes a lien in favor of the United States upon all property and rights to property belonging to the delinquent taxpayer. § 3671 fixes the date when the lien shall arise as of the time the assessment list was received by the Director, and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time. As to Marteney, and all others not excepted, the government lien on all of Marteney's property, "which includes obligations, rights and other intangibles, as well as physical things", was perfected as of June 1953. State of Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312; Glass City Bank v. United States, 326 U.S.

---

1. The Marteney family continued to live in Gray County, Kansas, but Marteney was incarcerated in a Federal Penitentiary in Texas from about June 1, 1955.

265, 66 S.Ct. 108, 90 L.Ed. 56; United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071; Citizens State Bank v. Vidal, 10 Cir., 114 F.2d 380; Investment & Securities Co. v. United States, 9 Cir., 140 F.2d 894. It would also attach to any property which Marteney might thereafter acquire, including his interest in the United Press Association judgment. Glass City Bank v. United States, supra. The lien is superior to attachment and garnishment liens which were contingent on a later judgment. United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Gilbert Associates, Inc., supra; United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Liverpool & London & Globe Ins. Co., Ltd., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271. It is conceded that the tax lien of the United States is prior to the claim of the attorneys unless the claim is excepted by the provisions of § 3672.

■ The provisions of § 3672 are that the tax lien shall not be valid as against a mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Director in the manner authorized by the law of the state or territory in which the property subject to the lien is situated If there is no state law authorizing the filing of such notice, and only then, will the filing of a notice in the office of the Clerk of the United States District Court in the District where the property is located, constitute notice. The meaning of this section is that after notice has been given as permitted by state statute, the lien is enforceable against any mortgagee, pledgee, purchaser, or judgment creditor who acquires an interest thereafter. United States v. Security Trust & Sav. Bank, supra; United States v. Phillips, 5

Cir., 198 F.2d 634. "Congress enacted § 3672 to meet the harsh condition created by the holding in United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705, when federal liens were few, that a secret federal tax lien was good against a purchaser for value without notice." United States v. Gilbert Associates, Inc., supra [345 U.S. 361, 73 S.Ct. 703].

We are of the opinion that the transaction between Marteney and the attorneys was for a valuable present consideration, in which Marteney was relieved of his obligation on a note, and transferred to the law firm his interest in any judgment which might be obtained against the United Press Association to the extent of the amount due on the note at the time of the entry of the judgment. The agreement was voluntary and the result of arms-length negotiations between the parties. It was not a promise to pay the note out of the proceeds of a judgment. Marteney parted with his right in any judgment which might be recovered, and the attorneys became the absolute owners of a portion thereof to the extent of the amount due on the note. To be a purchaser, there must be a sale. "The sale of personal property in the usual sense ordinarily means the passing of title and possession for money or other consideration which the buyer pays or promises to pay." Nephi Processing Plant, Inc., v. Western Cooperative Hatcheries, 10 Cir., 242 F.2d 567, 570. In Five Per Cent cases (State of Iowa v. McFarland), 110 U.S. 471, 478, 4 S.Ct. 210, 214, 28 L.Ed. 198, it was said that "a sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent." See also Jones v. Corbyn, 10 Cir., 186 F.2d 450; Pender v. C.I.R., 4 Cir., 110 F.2d 477, 478, certiorari denied 310 U.S. 650, 60 S.Ct. 1103, 84 L.Ed. 1416.[2] The cancel-

---

2. In the Pender case, the question arose under the Internal Revenue Act of 1934, § 117(d), 26 U.S.C.A. Int.Rev.Acts, pertaining to capital losses on sale of assets.

The property in question was conveyed in settlement of obligations evidenced by notes. In holding that this amounted to a sale, the court said: "When they found

lation of liability on the note was equivalent to the payment of money, and the attorneys became purchasers of an interest in a future judgment within the meaning of § 3672. National Refining Co. v. United States, 8 Cir., 160 F.2d 951.

■ The United States contends that at the time of the agreement Marteney had only an inchoate right which was contingent upon obtaining a judgment, and not transferrable. The law of Kansas is that a contingent right in property may be transferred.[3] However, we need not concern ourselves with the question as to the nature of Marteney's claim at the time of the agreement, because, under the facts, we are concerned with a presently matured and ripened claim, not an inchoate one. It was the clear intention of the parties that the attorneys should own the judgment to the extent of the amount due on the note and when Marteney's claim later ripened into a judgment, the

transaction was complete. When the judgment was entered, under the terms of the agreement, which Marteney did not repudiate, the attorneys became the owners of Marteney's share of that judgment, or the proceeds thereof, to the extent provided for in the agreement, and to say that they were not purchasers within the meaning of § 3672 would be a failure to acknowledge realities. It would sustain the validity of a secret lien, contrary to the purpose of the statute.

■ The remaining question is whether the United States complied with the Kansas Statute in giving notice of their tax lien. 79–2605, Kan. Gen.Stat. 1949, makes provision for the filing of Federal tax liens under Internal Revenue laws "in the office of the register of deeds in any county in the state of Kansas, and when so filed shall be notice to all persons claiming an interest in the property of the person or persons against whom filed

themselves unable to pay the notes on maturity, instead of allowing the property to be sold by the trustee, they themselves sold it to the note holder, along with another piece of property, for the amount evidenced by the notes. That this was a sale of the property conveyed within any fair meaning of the term, even though the consideration was extinguishment of the debt secured by the deed of trust and not payment in money, does not admit of doubt. As said by Mr. Justice Gray in the Five Per Cent cases [State of Iowa v. McFarland], 110 U.S. 471, 478, 4 S.Ct. 210, 214, 28 L.Ed. 198, 'A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent'. See, also, United States v. Benedict, 2 Cir., 280 F. 76, 80; 4 Words & Phrases, Second Series, 437, 441 [38 Words & Phrases, Sale, pp. 56, 147]. Here the satisfaction of the notes upon which petitioners were liable was unquestionably the equivalent of the payment of money.

"If the two pieces of property had been conveyed to an outside party for the amount of the indebtedness and the proceeds of sale used to pay the notes, the statute would admittedly be applicable; and we cannot see that the nature of the transaction was in any way changed because the conveyance was to the

holder of the notes. A sale by a mortgagor of his interest in the mortgaged property cannot be deprived of its character as a sale merely because made to the holder of the notes secured by the mortgage. The holder of such notes, it is true, might have an advantage in bargaining power by reason of his ability to force a foreclosure, and this might have weight if the validity of the transaction were attacked in a court of equity; but it could not change the essential nature of the transaction where its validity was not questioned."

3. In Chatterton v. Clayton, 150 Kan. 525, 95 P.2d 340, 341–342, the court said: "Any sort of right or interest in property, whether vested or contingent, may be the subject of barter and sale. Knutson v. Hederstedt, 125 Kan. 312, 264 P. 41. An expectancy is ordinarily assignable. Clendening v. Wyatt, 54 Kan. 523, 525, 38 P. 792, 33 A.L.R. 278; 4 Am. Jur. Assignments § 19. No particular form or mode of conveyance is necessary to effect a valid assignment, if the intent to transfer and make over to another certain property is clearly established. Brewer v. Harris, 147 Kan. 197, 201, 75 P.2d 287." See also Markham v. Waterman, 105 Kan. 93, 181 P. 621; 6 C. J.S. Assignments § 12(b).

* * *". Although the statute does not specifically require that Federal tax liens shall be filed in the county where the taxpayer is domiciled, or where the property is located, to be effective on real and personal property of a delinquent taxpayer, we construe the statute to that effect. The purpose of § 3672 is to prevent secret tax liens from being effective against named classes of claimants to a delinquent taxpayer's property. We are convinced that the Kansas Legislature did not intend that the filing of a notice of assessment in any county in the state, however remote, would be notice throughout the entire state. To so construe the statute would require a search of the records of every county in the State of Kansas to determine whether there were any Federal tax liens outstanding against an individual. The evident purpose of the statute was to permit the filing of the notice in any county in the state, but to constitute notice to those named in the statute, the filing must be in the county of the domicile of the delinquent taxpayer or where some of his property is located. The property involved in this case was personal property. The situs of personal property is generally considered to be that of the domicile of the owner. Grand Prairie State Bank v. United States, 5 Cir., 206 F. 2d 217; Investment & Securities Co. v. United States, 9 Cir., 140 F.2d 894; 11 Am.Jur., Conflict of Laws, § 65 p. 352. The notice of assessment against Marteney admittedly was not filed in the county of his domicile or where the property was located, prior to the entry of the judgment, and therefore we find that it was not notice to the attorneys in this case when their title to Marteney's share of the judgment ripened. Grand Prairie State Bank v. United States, supra; United States v. Spreckles, D.C., 50 F.Supp. 789.

The government contends that Marteney is not the real party of interest, and therefore not entitled to maintain this appeal. However, Mar-

teney's obligation to the law firm was adversely affected by the judgment, and this appears to be a sufficient appealable interest. At any rate, the record does not disclose that the question was considered in the court below. The objection is not seasonable, having been made for the first time in the appellate court, since the matter could easily have been remedied, if need be, in the lower court in response to a timely objection at that time. McCandless v. Furland, 293 U.S. 67, 55 S.Ct. 42, 79 L.Ed. 202; 39 Am.Jur., Parties, § 108.

Judgment reversed and the case remanded with instructions to disburse the funds to Jochems, Sargent & Blaes.