UNITED STATES of America

v.

BOSTON AND BERLIN TRANSPORTATION COMPANY, Inc., Romeo J. Lavigne, The Francis M. Curtin Insurance Agency and Catherine M. Nevins.

Civ. A. No. 1674.

United States District Court
D. New Hampshire.
April 12, 1960.

Maurice P. Bois, U. S. Atty., Concord, N. H., for plaintiff.

Walter D. Hinkley, Lancaster, N. H., for Boston and Berlin Transportation Company, Inc.

J. L. Blais, Berlin, N. H., for Romeo J. Lavigne.

Arthur O. Dupont, Berlin, N. H., for The Francis M. Curtin Ins. Agency.

Robert D. Branch, Concord, N. H., for intervener Catherine M. Nevins.

CONNOR, District Judge.

This is an action by the United States to collect taxes, penalties, interest and additions owing by the defendant Boston and Berlin Transportation Company, Inc., hereafter referred to as Boston and Berlin. The United States filed a motion for summary judgment containing three paragraphs, the first and third of which were disposed of by order of this Court dated February 26, 1959. Disposition of the second paragraph was postponed pending an additional hearing on the question whether Romeo J. Lavigne was a "purchaser" within the meaning of Title 26 U.S.C. § 6323 of the 1954 Internal Revenue Code and Title 26 U.S.C. § 3672 of the 1939 Internal Revenue Code. Unfortunately, neither at the first hearing, nor at the second hearing at which Romeo J. Lavigne failed to appear, was the issue adequately presented.

The facts are briefly these. On February 15, 1952, Lavigne contracted with the defendant Boston and Berlin to purchase the latter's trucking business for $27,000. Although both Lavigne and Boston and Berlin had trucking certificates from the Interstate Commerce Commission, title to Boston and Berlin's business could not pass, because of I.C.C. regulations, until the I.C.C. approved the sale. Other facts regarding this contract will later appear.

Assessments by the Internal Revenue Service against Boston and Berlin were duly recorded on March 11, 1952, approximately one month after the contract was entered into. Other assessments were similarly recorded later at various times until November 10, 1952.

Under the contract, Lavigne was not to begin payments until the I.C.C. granted to him authority to operate the motor carrier business under a lease agreement or otherwise. Such a "provisional" approval was made by the I.C.C. on August 28, 1952, and payments were made by Lavigne after that date directly to Boston and Berlin, pursuant to the contract, until May 13, 1955, and thereafter to an escrow agent.

At various times from September, 1952, to January, 1956, the Internal Revenue Service filed notices of levy against Lavigne on property of or obligations owing to Boston and Berlin.

Apparently, the government's theory is that the contract of February, 1952, was not binding on the parties until the I.C.C. provisionally approved the sale in August, 1952. At that point, it is claimed, title passed, and Lavigne became obligated to Boston and Berlin for the purchase price. Because liens on the trucking business were placed in March, 1952, prior to the passing of title, the government contends that Lavigne bought subject to the liens. And since liens were placed on Lavigne's purchase obligations to Boston and Berlin at various times from September, 1952, the government

claims it is also entitled to the purchase payments. Thus Lavigne, who is not claimed to be a delinquent taxpayer, becomes the owner of a common carrier business subject to a substantial government lien for taxes which Lavigne does not owe and the existence of which he could not feasibly discover when he signed the agreement of February, 1952.

■ It is concluded that by the agreement of February, 1952, Lavigne became a "purchaser" within the meaning of Title 26 U.S.C. § 6323 of the 1954 Internal Revenue Code, and Title 26 U.S.C. § 3672 of the 1939 Internal Revenue Code and the government's lien does not attach to the assets which were the subject of the contract. By that contract, Lavigne became obligated to retain the services of counsel, at his own expense, in order to obtain authorization from the I.C.C. It does not appear that this approval was anything more than a formality, particularly since both Lavigne and Boston and Berlin were already licensed by the I.C.C. The contract is more than just an "agreement to agree." No additional agreement was even entered into after I.C.C. approval, nor was any necessary, because the February, 1952, agreement spelled out all the obligations of the parties.

Lavigne had no possible way to guard himself from subsequent government liens in making this purchase. Unlike mortgagees, who could preserve their security by recording, and pledgees, who could obtain protection by taking possession, Lavigne could do neither. As a purchaser, the most he could do was to check past liens and obligations of Boston and Berlin and then enter into a firm agreement. Such a firm agreement was in all probability necessary before the I.C.C. would grant approval. The contract describes Lavigne as the "purchaser" and Boston and Berlin as the "seller." Although this designation is not controlling, the contract spells out very real obligations on both sides. The approval by the I.C.C. was not a condition precedent to the validity of the contract because the parties were under an obligation to attempt to secure such approval. To saddle Lavigne with a tax lien on the business purchased, is not only unjust but also inhibitive of normal business negotiations.

■ The purpose of Title 26 U.S.C. § 6323, providing that government liens are not valid as against any prior purchaser, is to alleviate the harsh condition which existed where federal tax liens were held valid as against purchasers for value without notice. See U. S. v. Gilbert Associates, Inc., 1953, 345 U.S. 361, 363, 73 S.Ct. 701, 97 L.Ed. 1071, a case originating in this District.

Treasury Regulation 301.6323–1(a) (2) (a) defines the word "purchaser": "The term 'purchaser' means a person who, for a valuable present consideration, acquires property or an interest in property."

Although Lavigne may not have obtained title to property by the contract of February, 1952, he obtained an "interest" in property within the meaning of the Treasury Regulation quoted. The present consideration was his promise to attempt to secure I.C.C. approval and to pay $27,000 upon the happening of that event.

In United States v. Scovil, et al., 348 U.S. 218, 221, 75 S.Ct. 244, 247, 99 L.Ed. 271, it is stated that "[a] purchaser within the meaning of § 3672 usually means one who acquires title for a valuable consideration in the manner of vendor and vendee." It is to be noted that the case at bar is an unusual case because of the necessity of securing I.C.C. approval before title could pass.

Other cases which have defined the word "purchaser" either support the conclusion reached here or are distinguishable on their facts. See United States v. Franklin Federal Savings and Loan Association, et al., D.C.Pa.1956, 140 F.Supp. 286; United States v. Hoper, et al., 7 Cir., 1957, 242 F.2d 468; National Refining Co. v. United States, 8 Cir., 1947, 160 F.2d 951; United States v. Hawkins, 9 Cir., 1955, 228 F.2d 517; Marteney v. United States, 10 Cir., 1957, 245 F.2d 135.

In Leipert v. R. C. Williams & Co., Inc., et al., D.C.N.Y.1957, 161 F.Supp. 355, several persons entered into contracts to purchase land. They assumed the relation of landlord and tenant until title passed to them at various dates. The government recorded tax liens on November 28, 1949, which was prior to the passing of some of the deeds and subsequent to the transfer of others. The Court held that those receiving deeds after the recording date were not "purchasers," overlooking the fact that they, even though without title, had an "interest in property" within the meaning of the Treasury Regulation quoted above.

Accordingly, in disposing of paragraph 2 of plaintiff's motion for summary judgment, it is concluded that the lien of the United States of America does not attach to the property of Boston and Berlin Transportation Company, Inc. which I find was purchased by Romeo J. Lavigne.