**J. C. GAUVEY, d/b/a Gauvey Rig and Trucking Company, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16624.

United States Court of Appeals Eighth Circuit.

June 1, 1961.

Mart R. Vogel, Fargo, N. D., made argument for the appellant. George A. Soule, Fargo, N. D., and Alan Foss, Fargo, N. D., were with him on the brief.

Gordon Thompson, Asst. U. S. Atty., Fargo, N. D., made argument for the appellee. Robert Vogel, U. S. Atty., Fargo, N. D., was with him on the brief.

Before JOHNSEN, Chief Judge, and WOODROUGH and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

We have for determination the question of whether the lien of the Government for unpaid taxes is entitled to priority over the rights of appellant which were created by a document denominated as a "conditional sale contract" antedating the assessment and filing of the notice of the tax lien.

On May 1, 1956, the appellant agreed to sell to Basin Rig & Trucking, Inc. (Basin), certain personal property in accordance with the terms of a conditional sale contract which, in summary, contained these pertinent provisions: title to the property was reserved by the seller, appellant here, until the purchase price had been fully paid; the buyer, Basin, agreed that the loss, injury or destruction of the property did not release the buyer from payment of the purchase price; the buyer agreed to keep the property insured for the benefit of seller for not less than the amount owing and also agreed to pay all taxes thereon. Upon default by the buyer of any of the terms of the contract and the failure to pay all sums thereunder, or whenever the debt was deemed insecure, seller was authorized to take possession of the property and all rights of the buyer under the contract ceased and terminated. Buyer agreed that all payments made should belong to and be retained by

seller as rental and liquidated damages. Upon taking possession of the property, the seller was authorized to sell the same at public or private sale. Further terms indicated that the buyer had executed a purchase price note. The property was delivered to buyer on May 1, 1956, the date the contract was entered into.

On April 10, 1956, Basin, the buyer, also executed a chattel mortgage covering four I.C.C. trucking permits as security for the purchase price of the property which was the subject of the conditional sale contract. The contract and chattel mortgage were not filed for record until April 17, 1957. Delinquent withholding and excise taxes were assessed against Basin in November and December, 1956, and on February 19, 1957, a tax lien for $8,368.25 was filed with the Register of Deeds of Williams County, North Dakota.

Basin defaulted in the terms of the conditional sale contract and appellant instituted an action for foreclosure of the contract and a sale of the property. It appears from the opinion of the United States District Court, Gauvey v. Basin Rig & Trucking, Inc., 185 F.Supp. 374, 376, that pursuant to a judgment of that court, the United States Marshal sold the property but the amount realized was insufficient to satisfy all liens. This circumstance required the trial court to adjudicate and determine the question of priority. Its ruling was in favor of the Government as to the conditional sale contract and in favor of appellant as to the chattel mortgage. The theory of the trial court is fully reflected in its opinion, which exhaustively deals with the basic and underlying question of priority as well as various facets of the state and federal laws under consideration. In summary, the court held, (1) that the chattel mortgage covering the I.C.C. permits, which antedated the filing of the tax lien, was within the interests protected by § 6323 of the Internal Revenue

Code of 1954, and was superior to the tax lien even though the mortgage was filed for record after the notice of the tax lien had been filed; (2) that the conditional sale contract was *not* within the specific categories of antecedent interests protected by § 6323, to wit, "any mortgagee, pledgee, purchaser, or judgment creditor," and that furthermore, even though the conditional sale contract antedated the filing of the tax lien, under interpretation of the North Dakota Recording Statute, NDCC 34–05–06, 34–05–07, it was inferior and subject to the latter.

Although considerable attention was given by the trial court to the substance and effect of the North Dakota Recording Statutes in dealing with the conditional sale contract, and this issue has been briefed by the parties, we direct ourselves to the meaning and effect of § 6323, for, to our minds, it controls our decision in the instant appeal.

Section 6321 of the Internal Revenue Code of 1954, Title 26 U.S.C.A. § 6321 (§ 3670 of the 1939 Code), provides that if any person neglects or refuses to pay any tax after demand, the amount shall be a lien in favor of the United States upon all real or personal property belonging to such person. Section 6322 (§ 3671, 1939 Code), provides that this lien shall arise at the time the assessment is made. Section 6323 (§ 3672, 1939 Code), then provides that "the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate" in certain designated offices.

The deceptively simple language of § 6323 has given rise to a mass of litigation involving its proper interpretation and application. While not a specific priority statute as such,[1] it is clear that § 6323 was designed to give protection to the enumerated classes against secret, un-

1. See United States v. City of New Britain, 347 U.S. 81, at page 85, 74 S.Ct. 367, 98 L.Ed. 520; United States v. Gilbert Associates, Inc., 345 U.S. 361, at pages 365–366, 73 S.Ct. 701, 97 L.Ed. 1071. See and compare § 3466 Rev.Stat. (1875), 31 U.S.C.A. § 191, imposing strict priorities when tax debtor is insolvent.

recorded federal liens. While the courts have had frequent occasion to apply the statute to transactions subsequent to the attachment of the federal lien, it is equally clear that § 6323 will not be applied to have retroactive effect upon pre-existing rights of certain classes of creditors.[2] In reality, the main point of contention has revolved around the four specific categories of interest, which Congress has not seen fit to further define. Are the named categories to be given a literal interpretation—are form and labels to control—or shall the determination be made by reference to substance and the realities of the situation?

We are mindful of the teaching of the Supreme Court that "(t)he relative priority of the lien of the United States for unpaid taxes is * * * always a federal question to be determined finally by federal courts. The state's characterization of its liens, while good for all state purposes, does not necessarily bind this Court. * * *." United States v. Acri, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264.

The trial court [185 F.Supp. 378] reached the conclusion that since under North Dakota law, the conditional sale contract was not a mortgage, citing Tickfer v. Investment Corporation of Fargo, 63 N.D. 613, 249 N.W. 702, 704, the rule "first in time, first in right" applied. Having so determined, the court relied on the statement in United States v. City of New Britain, 347 U.S. 81, 88, 74 S.Ct. 367, 372, 98 L.Ed. 520, that "(t)here is nothing in the language of § 3672 to show that Congress intended antecedent federal tax liens to rank behind any but the specific categories of interests set out therein, * * *."

Our analysis of the various cases convinces that private liens or rights which compete with liens for federal revenues fall into two categories—those designated by the statute and those which are not mentioned, more particularly, it may be said that the division frequently lies between contractual claims and mere statutory rights. In the absence of a statutory specification of the extent to which given facts fit into the generic terms of § 6323, there is left for court determination the circumstances under which the statute will protect one who claims to be within one of the classes designated.

From the adjudications arising on facts which have brought the statute under consideration, there has evolved what is sometimes referred to as the doctrine of inchoate and general liens.[3] Such liens have fared badly in contests for priority, the courts holding that the federal tax lien defeats an antedating lien that is not specific and perfected. Supreme Court decisions which have applied this doctrine are United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, where judicial attachment lien affecting real estate antedated filing notice of federal tax lien; United States v. Gilbert Associates, Inc., 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 involving contest between town tax liens and lien for federal taxes; United States v. City of New Britain, 1954, 347 U.S. 81,

2. The history of § 6323 and its predecessors has frequently been reviewed, wherein it is observed that the statute was enacted to counteract the harsh condition created by the holding in United States v. Snyder, 1893, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705, to the effect that a secret federal tax lien was good against a subsequent purchaser for value without notice. See United States v. Gilbert Associates, Inc., supra, 345 U.S. at pages 363, 364, 73 S.Ct. at page 703; concurring opinion of Mr. Justice Jackson, United States v. Security Trust & Savings Bank, 340 U.S. 47, at pages 52–53, 71 S.Ct. 111, 95 L.Ed. 53; and Kennedy, "The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien," 63 Yale L.J. 905, 919 et seq. See also, Anderson, "Federal Tax Liens—Their Nature and Priority," 41 Cal.L.R. 241.

3. See Kennedy, supra, "The Relative Priority of the Federal Government," 63 Yale L.J. at pp. 911 et seq.; Mason City & Clear Lake R. Co. v. Imperial Seed Co., D.C.N.D.Iowa, 152 F.Supp. 145, 155, where the court refers to the doctrine as the "specific and perfected rule."

74 S.Ct. 367, 98 L.Ed. 520, involving relative priority of local real estate and water taxes over federal tax liens; United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264, where the question was whether a judicial attachment lien was entitled to priority over federal lien. A later case applying this test is United States v. R. F. Ball Construction Co., 1958, 355 U.S. 587, 78 S. Ct. 442, 2 L.Ed.2d 510 (R. F. Ball Construction Co. v. Jacobs, D.C.W.D.Tex., 140 F.Supp. 60, affirmed, 5 Cir., 239 F.2d 384), reversing a holding that an assignment made by subcontractor to his performance-bond surety, a chattel mortgage under Texas law, was within the protection of the federal statute. The Court stated, 355 U.S. 587, 78 S.Ct. 443:

> "The instrument involved being inchoate and unperfected, the provisions of § 3672(a) [now § 6323, 1954 Code], Revenue Act of 1939, 53 Stat. 449, as amended 53 Stat. 882, 56 Stat. 957, 26 U.S.C.A. § 3672(a), do not apply. See United States v. Security Trust & Savings Bank, 340 U.S. 47 [71 S.Ct. 111, 95 L.Ed. 53]; United States v. City of New Britain, 347 U.S. 81, 86–87 [74 S.Ct. 367, 98 L.Ed. 520]. * * *"

In all of the foregoing and other cases which could be cited, the Government, by application of the inchoate and unperfected doctrine, was successful in establishing priority of the federal lien even though the filing of notice thereof postdated the creation of the competing lien.[4] While we recognize from the teachings of the Supreme Court that "the statute excludes from the provisions of this secret lien those types of interests which it specifically included in the statute *and no others*" (emphasis added),[5] we are not persuaded to believe that in making determination of whether a person falls within one of the four categories, we must disregard substance and realities and resolve the issue on the basis of form, technicalities, or labels. Indeed, the Treasury Department promulgated Regulation 301.6323–1(a) (2) (ii) dealing with "meaning of terms" used in § 6323 which, in our view, evinces a clear purpose to give the terms a realistic application. It provides:

> "The determination whether a person is a mortgagee, pledgee, purchaser, or judgment creditor, entitled to the protection of section 6323(a), shall be made by reference to the realities and the facts in a given case rather than to the technical form or terminology used to designate such person. Thus, a person who is in fact and in law a mortgagee, pledgee, or purchaser will be entitled as such to the protection of section 6323(a) even though such person is otherwise designated under the law of a State, such as the Uniform Commercial Code."

Many courts have accorded the terms a broad and realistic meaning. In National Refining Co. v. United States, 8 Cir., 160 F.2d 951, there was a contest between the Government and National Refining Company as to a fund deposited in court which the Government claimed by virtue of a lien for unpaid taxes against one McDowell, which was recorded in July, 1945. National's claim was based upon a prior equitable assignment by McDowell of certain commissions to be earned by him and the validity and enforceability of this assignment were evidenced by a judgment of the Jackson County, Missouri Circuit Court entered September 6, 1945. We reversed the ruling of the United States District Court in favor of the Government, holding that National was a "purchaser" within the meaning

---

4. See collation and discussion of cases, Reeve, "The Relative Priority of Government and Private Liens," 29 Rocky Mountain L.R. 167. It will be noted that most of these cases involved statutory liens, not readily classified within the four specific categories of § 6323. See also, discussion, Mason City & Clear Lake R. Co. v. Imperial Seed Co., supra, 152 F.Supp. at pages 152–156.

5. From Mr. Justice Jackson's concurring opinion in United States v. Security Trust & Savings Bank, 340 U.S. at page 53, 71 S.Ct. at page 115.

of § 3672 of the 1939 Code (now § 6323). Compare also United States v. Boston & Berlin Transportation Co., D.C.N.H., 188 F.Supp. 304, where a buyer under contract for purchase of trucking business was held to be a "purchaser" within the meaning of the statute even though the contract provided that title could not pass until the I.C.C. approved the sale and the Government's lien was filed before approval of the I.C.C. was obtained; Elliott v. Sioux Oil Company, D.C.Wyo., 191 F.Supp. 847, where an assignment of the proceeds of crude oil from assignor's leases as security for payment of a debt was held to be a mortgage within the meaning of the statute; and Marteney v. United States, 10 Cir., 245 F.2d 135, involving assignment of proceeds of judgment while suit was pending. And compare Randall v. Colby, D.C.N.D.Iowa, 190 F.Supp. 319.

This brings us to the crucial issue of whether the contract between appellant and Basin for the sale of the property in question constituted a mortgage within the meaning of § 6323. As reference to 47 Am.Jur., Sales, § 833, and Vol. 2, Williston on Sales, Rev. Ed., §§ 324, 337, will disclose, there is confusion in regard to the relationship between conditional sales and chattel mortgages. Without attempting to collate or comment upon the various holdings on the subject, which of necessity depend upon the state statutes involved and the facts and circumstances present, the general rule seems to be that where personal property is sold and delivered to the purchaser with a reservation of title in the seller until the price is paid, the transaction is, in substance, a mortgage. See § 324 of Williston on Sales, supra; 47 Am.Jur., Sales, § 833; 14 C.J.S. Chattel Mortgages § 7, at p. 589, which states that the general test to be applied in determining whether the transaction is a mortgage or conditional sale is:

> "If the transfer is intended merely to secure an existing indebtedness or loan, it is a mortgage; but if the debt is extinguished, or if the money advanced is not by way

of a loan, and the grantor has the privilege of refunding if he pleases and thereby of entitling himself to a reconveyance, the transaction is a conditional sale."

The trial court's decision obviously was influenced by the statement appearing in Tickfer v. Investment Corporation of Fargo, supra, 249 N.W. 702, at page 704: "(o)ur law recognizes contracts of conditional sale as distinct from mortgages." The quoted statement must be viewed and considered in context and in light of the fact that Tickfer involved a contest or controversy between the assignee of the conditional sales contract and the purchaser of the automobile, and the rights of the respective parties under the contract upon default by the buyer. That the North Dakota court recognized the principle that a document is not interpreted solely by its label is clear from this pronouncement also appearing in the Tickfer opinion at 249 N.W. at page 705:

> "Inevitably, any contract whereby money is made payable in the future to one party and its payment secured by a chattel to which the party paying will have a clear title upon making the payments takes on the aspect of a mortgage. 'Such a transaction,' says Williston, § 579, supra, 'is in its essence analogous to a transfer of title to the buyer, and a mortgage back by the buyer to the seller in order to secure the price.'"

In the later case of Mevorah v. Goodman, N.D., 65 N.W.2d 278, the Supreme Court of North Dakota again recognized that a conditional sale contract may under proper circumstances, be regarded as a form of security, stating at page 286:

> "A seller of personal property under a conditional sale contract holds the legal title to the goods only as security for the performance of the contract by the buyer and where the seller wrongfully repossesses the property and wrongfully detains it, he is an implied trustee of the prop-

erty for the purchaser from whom the property was taken."

Also persuasive here is the North Dakota statute, § 51–07–10 of Vol. 10, North Dakota Century Code Annotated, which in relevant part provides:

"All reservations of the title to personal property, as security for the purchase money thereof, when the possession of such property is delivered to the vendee, shall be void as to subsequent creditors without notice, * * * unless such reservation is in writing and is filed *the same as a mortgage of personal property*. In indexing such instruments, the register of deeds *shall treat the purchaser as mortgagor and the vendor as mortgagee.*" (Emphasis supplied.)

The intention of the parties to the transaction, as ascertained from the terms of the agreement, their conduct, and the attending circumstances, is an important factor in determining the realities of the situation. 14 C.J.S. Chattel Mortgages § 7, p. 590.

The document under consideration is before us in summarized form in the agreed statement of the parties. There is no ambiguity therein—analysis of the terms and conditions thereof impels a finding that the parties intended it as a high-grade security to assure the seller's receipt of the purchase price and performance of other obligations and conditions agreed to by the buyer which were expressed in the contract.

Being mindful that the Supreme Court has adhered to the principle that the statute is not to be extended to afford protection to holders of inchoate and unperfected liens, we are nevertheless satisfied that the conditional sale contract does not fall within that category. The lien provided therein came into existence upon execution of the contract—it was no less choate and perfected than the companion chattel mortgage which the trial court ruled was entitled to priority over the Government's lien. As to the fact that the contract was not recorded until after notice of the Government's lien was filed, we are in full agreement with the trial court's ruling upon this point in dealing with the chattel mortgage. While there appears to be a division in the courts on this question, we observe that the factor of recording is not mentioned in § 6323 and, in our opinion, this element should not be read into the statute as a condition precedent to the protection afforded the enumerated classes.[6]

Irrespective of the nomenclature employed, realistically the conditional sale contract was a mortgage within § 6323; appellant falls within the protected class and his lien is entitled to priority. Accordingly, the judgment is reversed with directions to enter a judgment in accordance with the views herein expressed.

---

6. See Mason City & Clear Lake R. Co. v. Imperial Seed Co., supra, 152 F.Supp. 145, 157, where Judge Graven cites authority pro and con. Here, the trial court at page 377 of 185 F.Supp., relied upon the statement: "Neither does the fact that the instrument was not recorded under the State's fraudulent conveyance statutes—thus to impart constructive notice to subsequent purchasers, mortgagees and the like—make any difference here, for the instrument was valid between the parties to it, and Congress, by § 3672(a) expressly subordinated federal tax liens to antecedent mortgages," which appeared in the dissent by Mr. Justice Whittaker in United States v. R. B. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510, noting that the quoted statement "is not at variance with any expressed statements of the majority." See also, Anderson, supra, "Federal Tax Liens," 41 Cal.L.R. at pp. 258, 259.