BARNES, Appellant, v. HILL CITY LUMBER COMPANY, Respondent.

(147 N. W. 775.)

**1.   Contract—Tender—Offer of Performance—Extinguishment of Obligation—Conditions Outside of Contract.**

Under Civ. Code, Sec. 1160, concerning an offer of performance, and Sec. 1166, concerning the extinguishment of an obligation, **held**, that an offer by defendant, in an action upon contract, to pay a certain amount upon performance by plaintiff of a condition which plaintiff was not bound to perform, does not extinguish the obligation to pay money, no deposit having been made of the amount so offered, but does entitle plaintiff to recover the amount admitted by defendant to be due.

**2.   Contract—Written Contract—Oral Contract, Not Collateral—Intermingling Contracts in Finding.**

Where a written contract required defendant to pay an indebtedness due from W. to plaintiff, in consideration of plaintiff releasing a mortgage upon certain ties and other personalty which W. had agreed to sell to defendant, **held**, that an oral contract, whereby defendant agreed to pay W.'s indebtedness to another upon certain of the ties being delivered to defendant, was not collateral to the written contract, but was independent thereof; and it was error for trial court, in an action on the contract, to intermingle in its finding the terms of the two contracts.

**3.   Contract—Collateral Executory Oral Contract, Independent Contract—Written Contract Unaffected by—Parol Evidence.**

A valid oral contract, collateral to a written contract, exists as an independent contract, even though the consideration be found in some terms or conditions of the written contract, but an unexecuted oral contract cannot modify or change the terms of the written contract to which it is collateral.

**4.   Contract—Construction—Delivery of Released Mortgaged Property by Mortgagee—Limit of Obligation to Deliver·**

Where plaintiff mortgagee, agreed with mortgagor and defendant to release the mortgage upon certain ties which mortgagor had sold to defendant in consideration of defendant's promise to pay for the ties in an amount sufficient to cover plaintiff's indebtedness, **held**, that, if the contract required plaintiff to deliver any of the ties, it was only of a sufficient quantity to pay the debt.

**5.   Appeal—Error—Ambiguous Contract—Amount Due—Insufficiency of Evidence—Reversal.**

Where trial court erroneously held that plaintiff was not entitled to recover anything under a written contract which was ambiguous as to amount defendant owed, and plaintiff's mortgage on certain ties and other personalty, released in consideration of defendant's promise to pay the mortgage debt, was also uncertain as to the amount due thereunder, and there was no evidence from which the intention of the parties can be ascertained, the judgment will be reversed with directions to ascertain the amount due.

(Opinion filed June 8, 1914.)

Appeal from Circuit Court, Custer County. Hon. LEVI McGEE, Judge.

Action by James B. Barnes against the Hill City Lumber Company, to recover money under a written contract. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed, and new trial ordered.

*Eastman &Dudley,* and *F. W. Sellers,* for Appellant.

*Frank D. Bangs,* and *Lawrence H. Hedrick,* for Respondent.

(3) Under point three of the opinion, Appellant cited:

Section 1287, Civil Code; Manufacturing Co. v. Galloway, 5 S. D. 205; Barton v. Koon, 20 S. D. 7.

Schriner v. Dickinson et al., 20 S. D. 433; Kimm v. Wolters, 28 S. D. 255; Steel Safe Company v. First State Bank, 28 S. D. 426.

Respondent cited:

Michaels v. Armstead, 14 Fed. 219; Brigg v. Hilton, 99 N. Y. 517; Mobile Railway Co. v. Jurley, 11 U. S. 585; Unger v. Jacobs, 14 N. Y. Supp. 220; Julliard v. Chaffee, 92 N. Y. 529.

This testimony, even if treated as a variance of the terms of the written contract, is still admissible as establishing the consideration or inducement for the written agreement. DePue v. McIntosh, 127 N. W. 532 (S. D.).

(4) Under point four of the opinion, Appellant submitted:

That defendant has taken under said contract, ties which it admits it has not paid for, for some $40.00 more than enough to settle plaintiff's claim. It has, according to its own admissions, received in lumber and ties under said contract at an agreed price, upwards of $650 more than enough to pay both the plantiff's and Hanley's claim and all the claims against Walker.

Plaintiff did deliver, or cause to be delivered, at the Burlington side track at Custer, all of the ties upon the Meeker homestead, something like 5,500.

Respondent submitted:

The contract of September 27th contemplates that all of the ties held by Barnes as security under his bill of sale, were to be released from his lien and delivered over to the defendant corporation in consideration of its agreement to pay the indebtedness of Walker to him.

(5) Under point five of the opinion, Appellant submitted:

That it stands admitted of record that the balance due Barnes from Walker is $1,072.82.

SMITH, P. J.. Plaintiff who is appellant here, sued to recover $1073.74, a balance alleged to be due under a written contract, of date of Sept. 27, 1911, which will be hereinafter referred to. Trial to the court. The following facts may be taken as conceded on the record before us.

One Meeker was the owner of a homestead near the town of Custer, on which was situated a considerable quantity of logs and timber. About the 7th of July, 1911, one Roy T. Walker, by a written contract, purchased the logs and timber. Walker who was then attempting to operate a sawmill on the Meeker homestead, was indebted to Meeker in the sum of $1175.00, as stumpage for logs cut on Meeker's homestead, and was also

indebted to plaintiff Barnes, in the sum of $515.50, on account of the purchase price of the sawmill.    Walker had become financially embarrassed, and was unable to proceed with the cutting and manufacture of the timber.  He applied to the plaintiff Barnes for financial assistance.  Barnes agreed to and did pay Meeker the $1175 stumpage due from Walker.  Walker thus became indebted to him in the total sum of $1690.50.  Barnes also orally agreed with Walker to advance further sums to cover the cost of cutting and manufacturing the timber.  As security for this indebtedness, Walker agreed to and did execute and deliver to Barnes, a bill of sale which was signed by defendant, upon request of Barnes, covering all the lumber, logs, ties and timber on the Meeker homestead.  It is conceded that this bill of sale was a mortgage.  Walker, being desirous of obtaining the lumber for shipment to fill a contract he had made with the Rapid City Lumber Co., Barnes and defendant, on Sept. 27, 1911, entered into a written contract whereby Barnes in legal effect, released his mortgage and agreed "to allow the said parties of the second part to have said R. T. Walker ship the said lumber to complete a certain contract with the said Rapid City Lumber Co., and take the payment of the said amount $1750, more or less, and interest, at such time as said lumber can be moved and the ties hauled to the track."

This contract recites that the lumber consists of "some 180 to 200 M. ft. B. M.," together with "some 5,500 ties," and further provides: "In consideration of the foregoing, the parties of the second part herein, agree to take up and pay for all the No. 1 eight ft. railroad ties in the above amount of ties, (5,500) sufficient to cover the amount due and owing to the said party of the first part, amounting to $1750, more or less, and interest, just as soon as the said lumber can be hauled out and the contract with the Rapid City Lumber. Co. * * * can be filled, and the money released that is  in   escrow in the Pennington Bank of Rapid City, S. D.; it is further agreed in and between the parties herein named, that the clear lumber in this cutting is not included in the above permit to sell, but the party of the first part (Barnes) has the right to sell said clear lumber and apply the proceeds as a credit on the above indebtedness of

$1750, and interest. The value of the lumber to be turned to the Hill City Lumber Co. is mutually agreed and placed at $10 per M. ft. B. M. at the sawmill; it is further agreed that the ties are to be paid for at the landing before being shipped, to the amount of the above indebtedness, said ties to be delivered on the Burlington track at Custer, S. D." The trial court found that pursuant to this contract, plaintiff sold the clear lumber and received therefor, the sum of $417.20; that all the lumber referred to in said contract was released to and shipped by Walker, and that 3973 railroad ties were delivered to the defendant, at the Burlington railroad tracks at Custer. The undisputed evidence shows that the ties delivered were of the value and were accepted at the price of 46¾ cents per tie. It appears to be undisputed that at a later settlement between Walker and Barnes as to the total amount of Walker's indebtedness to Barnes for payment for stumpage, for money due on purchase price of sawmill, and money advanced for wages of men, and expense of operating sawmill, the sum of $2224.54 was found due to Barnes. It is undisputed that plaintiff received the sum of $417.20 for the clear lumber sold, and also $734.52 realized from two shipments of ties, which credits aggregated $1151.72, leaving a balance due as claimed by Barnes, of $1072.82 exclusive of interest. These facts appearing, it becomes necessary to consider other matters alleged in the answer, upon which defendant predicates its defense.

[1] The answer in part alleges, that during the month of September, 1911, Walker was indebted to one Hanley of Custer, in the sum of $1200; that Walker, being then obligated to deliver certain lumber to fill a contract with the Rapid City Lumber Co., the defendant entered into an agreement with Walker and plaintiff, whereby plaintiff agreed to release from the lien of his mortgage all the timber, lumber, ties and logs, and to deliver the lumber to Walker, to the end that Walker might complete his contract with the Rapid City Lumber Co., and particularly agreed to deliver 5,500 ties to the defendant at the Burlington track at Custer; that in consideration of said agreement, defendant agreed to endorse Walker's note to Hanley in the sum of $1,200. and to pay the same, and further agreed to pay to plaintiff the sum of $1750.00 with interest thereon due from Walker

to plaintiff, upon complete delivery of said lumber and ties, less such sum as plaintiff should realize from the sale of clear lumber. The trial court found that the parties entered into a contract on the 27th of Sept. 1911, which was to secure to plaintiff the sum of $1750, with interest thereon less such sum as the plaintiff should receive from sale of the clear lumber, and that payment of the balance was to be made to plaintiff by defendant, when said ties were delivered by plaintiff to defendant, on the landing at the Burlington railroad track, at Custer, and after the said lumber had been shipped, and the contract with the Rapid City Lumber Co. had been filled, and certain moneys then in escrow in the Pennington County Bank in Rapid City, had been released. The court further found that defendant as a part of the consideration of said contract, agreed to endorse Walker's promissory note of $1200 to Hanley, above mentioned; that the plaintiff did release and surrender all the lumber, and the same was shipped by Walker, pursuant to his contract with the Rapid City Lumber Co., which contract was never completed, but on or about the 20th of Sept. 1911, was abrogated by consent of the parties thereto, and a new contract substituted in lieu thereof; that the money held in escrow in the Pennington County Bank, was never released, but continued to be held by virtue of the substituted contract above mentioned; that the plaintiff delivered to defendant 3973 ties and no more, but failed and refused to deliver the remaining 1527 ties which were on the Meeker homestead at the time of making said contract, and did appropriate and convert the same to his own use; that the defendant did endorse the Walker-Hanley note, and has repeatedly demanded of plaintiff delivery of the remaining 1527 ties required by said contract, and has offered to pay plaintiff the amount due under said contract upon delivery to defendant by plaintiff of the balance of said ties.

The answer alleges that defendant has been at all times, and now is, ready and willing to pay plaintiff the amount of $598.28, and has repeatedly offered to do so, upon plaintiff's delivering to defendant the remaining 1527 No. 1 eight ft. railroad ties, required by the terms of said contract. These allegations of the answer and the findings of the trial court, in effect, show an abandonment of all matters of defense except the alleged failure of

plaintiff to deliver 1527 ties required by the contract. The answer in effect, also constitutes an offer of performance on the part of defendant under the contract. Sec. 1160 Civ. Code provides:

"An offer of performance must be free from any condition which the creditor is not bound on his part to perform."

Such an offer as that alleged in the answer, does not, in any event, extinguish the obligation. Sec. 1166 Civ. Code, provides:

"An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor with some bank of deposit within this state, of good repute, and notice thereof is given to the creditor."

The offer of payment was on condition that plaintiff deliver to defendant "the remaining 1527 No. 1 eight ft. railroad ties, as required by the terms of said contract." If the defendant under the terms of the contract, had a right to interpose as a condition to performance upon its part, the delivery of the number of ties specified, the plaintiff was not entitled to recover even though the amount remaining unpaid be admitted. But if the offer was accompanied by a condition which Barnes was not bound to perform under the contract, the plaintiff was entitled to recover at least the amount remaining unpaid, as admitted by defendant. Was the plaintiff obligated by his written contract, to deliver *to defendant* 5500 ties at the Burlington tracks at Custer? If not, the trial court erred in dismissing plaintiff's action.

[2] The written contract is silent as to Walker's indebtedness to Hanley, and contains no reference to an endorsement of Walker's note, or payment thereof, by defendant. The trial court however, permitted oral evidence of such alleged agreement to be received at the trial, and seems to have based its findings in part upon this evidence. The terms and conditions of the alleged oral agreement as to the Hanley indebtedness, and the terms and conditions of the written contract, are mingled in a single finding by the trial court, as though constituting but one contract. Respondent seeks to sustain this finding upon the theory that the oral contract was collateral to the written con-

tract, and the consideration for the oral contract found in bene-
fits conferred upon plaintiff, or detriment to be suffered by de-
fendant, under the terms of the written contract. The indebted-
ness secured by the bill of sale or mortgage, from Walker and
defendant, to plaintiff was independent of and had no connection
with, the indebtedness from Walker to Hanley, so far as the record
discloses. Barnes, in consideration of defendant's agreement to pay
the indebtedness due him from Walker, released to the defend-
ant and Walker, the entire security held by him, except that portion
described as clear lumber. Upon such release, the entire bal-
ance of lumber, logs, and ties was placed within the control and
disposition of Walker and defendant, with the single stipulation
that ties should be paid for on delivery at the railroad station
at Custer, and before shipment. Whether this stipulation was
for the benefit of Walker or the defendant, is not apparent. The
contract does not require payment to be made to Barnes, and
it is difficult to understand upon what construction such a con-
tention could be founded. Barnes had accepted the written con-
tract in lieu of the former security for Walker's indebtedness
and as consideration for this contract, the defendant or Walker,
or both, were entitled to the money realized from a sale of the
ties, for the simple reason that defendant could only reimburse
itself out of such moneys for the amount it had become obligated
to pay Barnes. There may, in fact, have been an oral agreement
between the defendant and Walker, that the defendant, upon re-
ceiving the money realized from a sale of the lumber and ties,
would also pay Walker's indebtedness to Hanley, but such
agreement, if it existed, had nothing to do with the written con-
tract between plaintiff and defendant and was not in any sense,
collateral to that contract, even if it be assumed that Barnes'
release of his security would thus benefit Hanley. It is clear
that no benefit could inure to Barnes therefrom, even though he
assented to such an arrangement between the defendant and
Walker and Hanley.

[3] It is plain, moreover, that such an oral contract
should not have been considered by the trial court as collat-
eral to the written contract. A valid oral contract, collateral
to a written contract, exists as an independent contract, even
though the consideration therefor be found in some of the

terms or conditions of the written contract. Nor can an executory oral contract modify or change the terms and conditions of a written contract, to which it is collateral. In the finding by the trial court, the terms of the alleged oral contract are intermingled with those of the written contract, as though the two constituted a single contract. Furthermore, the contract, as found by the court, materially changes certain provisions of the written contract. It is sufficient for the purposes of this decision to say that such a finding by the trial court, cannot be held decisive of the plaintiff's rights.

[4] The court found that the plaintiff "did deliver to the defendant at the Burlington railroad tracks, at Custer, S. D., 3973 of the said railroad ties and no more; that he wholly failed, re-fused and neglected to deliver to the defendant the remaining 1527 ties, which were on the Meeker homestead, at the time of the making of said contract, and did appropriate and convert the same to his own use and benefit."

Those portions of the finding to the effect that plaintiff failed to deliver certain ties, and that he appropriated and converted certain ties to his own use and benefit, are wholly unsupported by anything disclosed in the printed record. It is apparent therefore, that the whole defense is disclosed in the allegation and finding that plaintiff failed to deliver to defendant "1527 ties which he agreed to deliver according to the terms of said contract." Was defendant entitled to such delivery as consideration for the obligation assumed to pay Walker's indebtedness to Barnes? It is true, the written contract released to Walker and defendant "some 5500 ties," but no provision is found therein obligating plaintiff to deliver a single tie at any place. The defendant agrees, "to take up and pay for all the No. 1 eight ft. railroad ties in the above amount of ties (5500) sufficient to cover the amount due and owing to the said party of the 1st part, amounting to $1750, more or less, and interest, just as soon as said lumber can be loaded out, and the contract with the Rapid City Lumber Co. can be filled, and the money released that is in escrow in the Pennington Bank of Rapid City, S. D." That is, the defendant agreed "to take up and pay for" the ties just as soon as certain other things are done,

and also that the ties are to be paid for at the landing, before being shipped, to the amount of plaintiff's indebtedness.

The contract provides that Walker shall ship the lumber, and it may be inferred that Walker also is to deliver the ties on the Burlington track, and that the defendant is to collect from the purchaser, the price thereof, before the ties shall be shipped. This might benefit Walker in his dealings with defendant. But even the quantity of ties to be delivered is limited by the express terms of the contract, to the amount of *plaintiff's* indebtedness. It is conceded in defendant's answer, that the defendant did receive on the Burlington track at Custer, 3973 ties, shown to be of the value of 43¾ cents, each, aggregating a sum much greater than the indebtedness due to plaintiff. It may also be noted that defendant agreed to take up and pay only for *"all the No. 1 eight foot ties"* in the amount of about 5500 ties on the Meeker land. This contract covers none of the inferior ties which might be in the lot. There is no evidence that the ties not delivered were of the grade required by the contract at all. Presumably the ties delivered and accepted were of that grade. The defendant had no more right to demand delivery of inferior ties than plaintiff had to require their acceptance in case the No. 1 ties in the lot were not enough to pay his debt. The trial court was clearly in error in holding in effect, that plaintiff's rights were in some way affected by the alleged oral contract to pay Hanley's note. But even if it be assumed—which we do not decide—that plaintiff was required to deliver the ties at the railroad, it is clear that he was not bound to deliver a greater quantity than would pay the amount due him, under the written contract. He was not bound to deliver the ties to realize funds out of which to pay the Hanley note. When ties delivered equalled the amount due him, under the contract, and such ties were paid for as agreed, plaintiff's claim would be satisfied, and thereafter he would have no further interest in the remainder of the ties or the lumber. It is admitted that the ties actually delivered at the railroad, amounted in value to $1857.37, at their agreed price. Under the written contract, plaintiff was entitled to receive that sum, or so much thereof, as remained due, after application of the $417.20 received for the clear lumber. It is conceded that the ties delivered, and the

clear lumber were more than sufficient to pay the full amount claimed by plaintiff. Clearly then, the trial court erred in denying plaintiff any recovery whatever.

[5] The trial court seems to have held that the written contract did not obligate the defendant to pay any indebtedness of Walker to Barnes for advances made for manufacturing lumber or ties, after the execution of the contract. Even if it be conceded that the original oral agreement between Barnes and Walker preceding the execution of the mortgage, contemplated that the mortgage should stand as security for other money advanced by Barnes, the written contract sued on, which was substituted for the mortgage security, in that respect, seems to be ambiguous and uncertain in its terms. The written contract contains no specific recital of or references to advances made by Barnes to manufacture the lumber or ties, and if such were intended to be secured thereby, the words "more or less" alone, must cover them. There is no evidence in the record from which the intent of the parties in that respect, may be satisfactorily ascertained. Again the written contract is ambiguous and uncertain in that it does not expressly require any act of delivery or otherwise, on the part of Barnes, with reference to the lumber and ties formerly held by him as security, nor is there any evidence in the record from which a satisfactory conclusion may be drawn.

It is not ascertainable from the contract itself, whether the indebtedness due Barnes was either more or less than $1750.00. In this state of the record, the judgment of the trial court must be reversed, with directions to the trial court to ascertain and determine the particular amounts or items of indebtedness intended to be secured by the written contract, and the full amount of such indebtedness remaining unpaid. These matters can only be ascertained and determined by proper and relevant oral and other evidence which, taken in connection with the written contract, may render the intention of the parties and the amount of indebtedness sufficiently clear.

The findings and judgment of the trial court are therefore reversed and a new trial ordered.