358 F.Supp. 392 (1973)
Application of Cecile ROBERTS, d/b/a The Bodega Bar, Deadwood, South Dakota, for a Low Point Beer License for the year 1971-1972 and an Intoxicating Liquor License, Class E, for the year 1971.
No. Civ. 71-43W.
United States District Court, W. D. South Dakota.
January 23, 1973.
*393 *394 William F. Clayton, U. S. Atty., Sioux Falls, S. D., for plaintiff.
Francis J. Parker, Deadwood, S. D., for defendant.

MEMORANDUM DECISION
BOGUE, District Judge.
On June 1, 1966, Cecile Roberts, owner of the Bodega Bar in Deadwood, South Dakota, entered into a contract with one O. A. Kelley in which she agreed to sell and he agreed to buy the Bodega Bar.
On November 6, 1967, Kelley assigned his interest in the aforementioned contract to one Robert Dardis, subject to all of the terms of the original contract between Kelley and Roberts.
Beginning on July 3, 1970, and extending into May, 1971, the United States made tax assessments against Dardis d/b/a the Bodega Bar in the total sum of $9,330.77.
On March 19, 1971, the original contract between Roberts and Kelley, together with the assignment thereof, were filed in the office of the Register of Deeds, Lawrence County, South Dakota.
On March 22, 1971, Dardis, having been in default on his payments, Mrs. Roberts instituted a summary foreclosure action and advertised a sale of the "goodwill of the business and all business licenses thereon."
On March 29, 1971, two notices of tax levies were filed by the Internal Revenue Service in the Register of Deeds office, Lawrence County, South Dakota, one of such forms being for the assessment of taxes for the period ending September 30, 1969, in the sum of $2,890.26, and the second notice being for tax assessments for the period ending December 31, 1969 in the sum of $1,652.71.
On April 3, 1971, pursuant to the foreclosure action, the sheriff of Lawrence County, South Dakota, conducted a sale of the Bodega Bar, at which Mrs. Roberts was the high bidder.
On April 29, 1971, two further notices of tax levy were filed by the Internal Revenue Service in the Lawrence County Register of Deeds office. The first of such notices covered the period ending June 30, 1970, and was in the sum of $1,460.07. The second of such notices covered the period ending December 31, 1970, and was in the sum of $2,005.58.
On May 3, 1971, the United States, after having discovered that the liquor licenses used in the operation of the Bodega Bar had been removed from the premises, served a notice of levy on the Deadwood City Council, which had received possession of the licenses from Mrs. Roberts. This levy was issued in order to enable the United States to sell the licenses to satisfy Mr. Dardis' tax liabilities.
On May 14, 1971, the Deadwood City Council issued two new liquor licenses to Mrs. Roberts, and indicated to the Commissioner of Revenue of the State of South Dakota that such issuance cancelled Dardis' licenses.
The Commissioner of Revenue, having learned of the interest of the United States, declared that "until a determination is made as to the proper party in interest in the presently existing license," such license would be issued in the name of Mrs. Roberts, but would be deposited with the state court pursuant to S.D.C.L. § 15-6-67(c).
On June 2, 1971, the licenses, having been deposited with the state court, that court entered an order allowing Mrs. Roberts to operate under the licenses "pending a resolution of the basic questions involved herein . . ." A notice of depository was mailed to the United States on June 3, 1971.
On July 27, 1971, the United States was served with an order to show cause why the licenses held by the state court *395 should not be released and returned to Cecile Roberts.
On August 10, 1971, the United States filed a petition for removal with this Court and the case was heard on its merits on August 14, 1972.
Section 6321 of the Internal Revenue Code, entitled "Lien for Taxes," provides:
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
26 U.S.C.A. § 6323(a) provides that "[t]he lien imposed by § 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate." In this case such notice had to be filed with the Lawrence County, South Dakota, Register of Deeds, 26 U.S.C.A. § 6323(f)(1)(A)(ii); S.D.C.L. 44-7-2, in order to have priority over the aforementioned interests. The language quoted above was effectuated by a 1966 amendment. Prior to 1966, § 6323(a) provided that the lien imposed by § 6321 was not valid as against any purchaser, mortgagee, pledgee and judgment creditor until notice thereof which met the requirements of subsection (f) had been filed by the Secretary or his delegate. The 1966 amendment made the language above quoted effective as of November 2, 1966, regardless of when a lien or title of the United States arose or when the lien or interest of any other person was acquired. Nevertheless, the amendment provided for exceptions in certain cases. The amendments made by this title would not apply in any case in which such amendments would "impair a priority enjoyed by any person (other than the United States) holding a lien or interest prior to the date of enactment of this act. . . ." The effect of such an exception would allow for Mrs. Roberts to enjoy the status of either a mortgagee, pledgee, or judgment creditor and still fall within the provisions of § 6323(a) providing for notice. Thus, if the contract dated June 1, 1966, between Mrs. Roberts and O. A. Kelley, created in Mrs. Roberts the status of either a mortgagee, pledgee, judgment creditor, secured party, mechanics lienor or judgment lien creditor, the United States, in order to obtain priority, would necessarily have had to file notice of the tax lien in the office of the Register of Deeds, Lawrence County, South Dakota.
The United States contends, that since neither the contract of sale, dated June 1, 1966, between Mrs. Roberts and O. A. Kelley, nor the assignment thereof between Kelley and Robert Dardis, specifically mentions "liquor licenses," a lien did not arise in favor of Mrs. Roberts and therefore, the summary foreclosure of the personal property in the Bodega Bar did not contemplate a foreclosure of the liquor licenses.
The contract of sale, dated June 1, 1966, between Mrs. Roberts and O. A. Kelley, provided for the sale of the following:
"All of the furnishings, furniture, fixtures, utensils, and other equipment on the date hereof utilized in connection with the operation of the Bodega Bar and Bodega Cafe, at Nos. 662 and 664 Main Street, Deadwood, South Dakota, including cash registers, adding machine, safe and restaurant supplies, all signs advertising the businesses of Bodega Bar and Bodega Cafe, whether at the places of said businesses or elsewhere. . . . As a part of the sale transaction represented by this instrument, purchaser is also purchasing the good will of the business named above and vendor has agreed to not enter into the restaurant business in Lawrence County, South Dakota, or to hold any interest in such a business, for a period of twenty years after date hereof."
*396 The assignment of the contract to Robert Dardis contained the same wording as set forth above.
Although the parties have stipulated that a liquor license is "property" to which a federal lien may attach, this Court is disposed to disregard such a stipulation and proceed to a determination of whether, under South Dakota State Law, such a license constitutes "property". S.D.C.L. 35-2-1.2 requires all retail liquor license applications be submitted to the governing board of the municipality wherein the applicant intends to conduct business. The local board is clothed with a wide discretion in determining whether a license will issue, and this discretion is additionally given to the Commissioner of Revenue under S.D.C.L. 35-2-5.2. The exercise of such discretion is imposed not only upon applications for "new licenses" but also upon the transfer of licenses to either a new location or to another person. S.D.C.L. 35-2-7.
S.D.C.L. 35-2-7 provides:
"Any license granted under this title may be transferred to a new location or to another person. Where the transfer is to another person, the licensee must show in writing, under oath, that he has made a bulk sale of the business operated under such license, which bulk sale may be conditioned upon the granting of a transfer of the license and the transferee must make application exactly as if an original applicant, and such application shall take the same course and be acted upon as if an original application. . . ."
From the above statutes, it is readily apparent that a liquor license in the State of South Dakota is nothing more than a personal privilege to participate in the monopoly granted to the state by the Twenty-First Amendment to the United States Constitution and implemented by Title 35 of the South Dakota Compiled Laws. Being a privilege, its value necessarily depends upon the circumstances of its use. Standing alone, a liquor license is worthless under the South Dakota statute. It is not a severable commodity from the premises where it is used. If it is transferred to another person, the transferee must also be the purchaser of the original licensee's business. The statutes could not be more explicit. Thus, the monetary value of a liquor license in South Dakota arises only by sale of a licensee's business and the transferee's subsequent approved application. But in and of itself, a liquor license, vests no property rights in a license holder which can be considered "property" within the verbiage of § 6321. The government, therefore, may not assert a tax lien against such a license, standing alone.
Since the foreclosure of the personal property of the Bodega Bar under a contract previously filed was validly carried out, and having already determined that a liquor license is not severable from the premises which are transferred, Mrs. Roberts' contract of sale and foreclosure thereof are senior to the tax liens asserted by the United States.
Moreover, even should this Court accept the stipulation of the parties that a liquor license, by itself, is a sufficiently valuable property right to which a federal tax lien may attach, there is another line of reasoning which disposes of the government's claim.
The general rule provides that a written contract supersedes all negotiations or stipulations. S.D.C.L. 53-8-5. However, as early as 1914, South Dakota Courts have recognized exceptions to this rule. Thus, in Barnes v. Hill City Lumber Company, 34 S.D. 158, 147 N.W. 775 (1914), the Court held that a valid oral contract, collateral to a written contract, may exist as an independent contract, even though the consideration may be found in some of the terms of the written contract, but only if such oral contract does not modify or change the terms of the written contract to which it is collateral. Moreover, parole evidence may be presented to establish the existence of any such oral contract *397 which is not inconsistent with the terms of the written contract, if from the circumstances of the case, the Court infers that the party did not intend the contract to be a complete and final statement of the whole transaction. See Putnam v. Dickinson, N.D., 142 N.W.2d 111, involving an interpretation of a statute similar to South Dakota's. See also, De Pue v. McIntosh, 26 S.D. 42, 127 N.W. 532; Janssen v. Tusha, 66 S.D. 604, 287 N.W. 501.
The testimony taken during the course of the trial and received over objection by the Government, conclusively shows that a collateral oral agreement was, in fact, entered into between the parties to the original contract, which contemplated the transfer of the liquor licenses in question to the purchaser, subject of course, to the conditions of the written contract. This agreement was confirmed by Dardis under Roberts' bulk sale affidavit of the stock and business of the Bodega Bar, under which Dardis was able to secure the transfer of Roberts' liquor license to him. It is also confirmed by the testimony that the purchase price of $50,000 in the written contract, included payment for the liquor licenses. This collateral oral agreement, in no manner, changes or modifies the terms of the written contract, and as between the vendor and purchaser, was an enforceable agreement.
This brings us to the crucial question of whether the written contract between Mrs. Roberts and O. A. Kelley for the sale of the property and the collateral oral contract for the sale of the liquor licenses, created in Mrs. Roberts the status of a "purchaser, holder of a security interest, mechanics lienor, or judgment lien creditor" under the 1966 amendment to 26 U.S.C.A. § 6323(a) or the status of a "purchaser, mortgagee, pledgee, and judgment creditor" under 26 U.S.C.A. § 6323(a) before the 1966 amendment. As discussed previously, under Public Law 89-719, § 114(b) Exceptions, the 1966 amendment, which changed the classifications of protected individuals and which had November 2, 1966 as the effective date, did not apply "in any case . . . (2) in which such amendments would (A) impair a priority enjoyed by any person (other than the United States) holding a lien or interest prior to the date of enactment of this Act . . ." Thus, if the June 1, 1966 contract created in Mrs. Roberts the status of even the latter four enumerated persons, she would be entitled to the protections of § 6323(a).
This Court is satisfied, under the reasoning of Gauvey v. United States, 291 F.2d 42 (8th Cir. 1961) that the written contract and collateral oral agreement constituted a mortgage within the meaning of § 6323(a), as amended, § 6323(a) (1966). As such, it is entitled to priority over an unrecorded federal tax lien. The Government argues, however, that regardless of the label attached to Mrs. Roberts' interest, since the written contract did not include liquor licenses, the filing of such on March 19, 1971, did not have the effect of giving notice to other creditors. Therefore, unless Mrs. Roberts filed a sworn statement of the lien with the Lawrence County Register of Deeds prior to foreclosure, as required by S.D. C.L. 21-54-4, the foreclosure on April 3, 1971, was invalid. However, as stated in Gauvey v. United States, supra, "the factor of recording is not mentioned in § 6323 and, in our opinion, this element should not be read into the statute as a condition precedent to the protection afforded the enumerated classes." Id. p. 47. Citation was then made to Mason City & Clear Lake R. Co. v. Imperial Seed Co., D.C., 152 F.Supp. 145, 157, and the following quote was set out in footnote 6: "Neither does the fact that the instrument was not recorded under the State's fraudulent conveyance statutes thus to impart constructive notice to subsequent purchasers, mortgagees and the likemake any difference here, for the instrument was valid between the parties to it, and Congress, . . . expressly subordinated federal tax liens to antecedent mortgages . . ." (emphasis added). In this case, even *398 though the collateral oral contract covering the liquor licenses was never recorded (obviously) and an affidavit was never filed prior to foreclosure, nevertheless the oral contract was binding between the parties to it and thus is entitled to priority (emphasis added).
Finally, a very real and most practical aspect of this case must not escape consideration by this Court. The power of the Government is now brought to bear on Mrs. Roberts, because of what the Government believes is a technical loophole. Had Mrs. Roberts' counsel, now deceased, listed the liquor licenses in the written contract initially, the Government would not now be urging that the lien attaches to Mrs. Roberts' liquor licenses, but the counsel advised her that it was not necessary to do this and that she and Kelley could accomplish the transfer of the liquor licenses by oral agreement. She relied upon this advice and proceeded. This Court takes judicial notice of the fact that a very great portion of the business of the Bodega Bar and Cafe is the sale of liquor. We would be naive indeed then to feel that the business could long survive without such licenses. A valid oral contract was entered into by Mrs. Roberts and Kelley. The licenses are the key to the sale, and the parties to the agreement knew it and relied upon it.
Further, the City Council of Deadwood, even with notice that the United States Government was attempting to impress its lien upon Dardis' liquor licenses, issued new licenses to Mrs. Robertswhich they had every right to do. No authority exists which could force the City Council or the State Commissioner of Revenue to grant a license to anyone. The Council made its choice and even if the Federal Government presented one hundred tax sale purchasers of liquor licenses, one right after the other, the Council could still say, and this Court is confident it would say, "Mrs. Roberts is our choice. We have exercised our discretion." To what avail would the Government's efforts then be? Mrs. Roberts obtained new licenses from the Deadwood City Council to be used on the premises she owned. The Dardis licenses having been turned in and not being part of any business and not having any specific location as required by law, simply ceased to exist.
The foregoing constitutes the Court's findings of fact and conclusions of law under Rule 52 F.R.Civ.P.