**CRYSTAL BAR, INC.; Reese M. Williams, individually; and Reese Williams Trust, Plaintiffs,**

v.

**COSMIC, INC.; Virgil Hauff, individually and d/b/a the Crystal; Ann R. Williams; Mary K. Williams; William D. Fish; Norwest Capital Management & Trust Co., Trustee for Lyle Heath; IRA/SEP; Sam Marras; United States of America Internal Revenue Service Department; and Joe Crawford, Defendants.**

**No. Civ. 90–5004.**

United States District Court,
D. South Dakota, W.D.

Feb. 25, 1991.

Robert A. Martin, Rapid City, S.D., for plaintiffs.

Doyle Estes, Rapid City, S.D., for Virgil Hauff and Cosmic, Inc.

Rick Johnson, Gregory, S.D., for Ann R. Williams.

Rich Huffman, Banks, Johnson, Johnson, Colbath & Huffman, Rapid City, S.D., for William D. Fish.

Lyle Heath, Rapid City, S.D., for Norwest Capital Management & Trust Co. and IRA/SEP.

Stan Anker, Rapid City, S.D., for Sam Marras.

Harold M. Sklar, Office of Special Litigation, Tax Div., U.S. Dept. of Justice, Washington, D.C., and Robert A. Mandel, Asst. U.S. Atty., Rapid City, S.D., for IRS.

Thomas Stanton, Rapid City, S.D., for Joe Crawford.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

## NATURE AND PROCEDURAL HISTORY

Plaintiffs Crystal Bar, Inc., Reese M. Williams, individually, and Reese Williams Trust originally brought this action on December 14, 1989, in South Dakota State Court, Seventh Judicial Circuit. The action was one to a quiet title. The United States (IRS) was joined pursuant to 28 U.S.C. § 1446(d). The United States removed the case to this Court pursuant to 28 U.S.C. §§ 1444 and 1446.

Plaintiffs challenge certain tax liens for income and employment taxes asserted by the IRS under the Federal Tax Lien Act, 26 U.S.C. § 6321 *et seq.*

Plaintiffs move for partial summary judgment against defendant IRS. IRS has filed a cross motion for summary judg-

ment. In addition, United States has filed a motion for summary judgment asserting its lien against the interests of the defendants Ann R. Williams, Mary K. Williams, William D. Fish, Norwest Capital Management & Trust Co., Trustee for Lyle Heath, IRA/SEP, Sam Marras, and Joe Crawford.

Based upon the findings of fact and conclusions of law set forth herein, judgment is entered in favor of the United States.

## FACTS

### A. *The Purchase Agreement*

On March 27, 1984, plaintiffs Crystal Bar, Inc., Reese M. Williams, individually, and Reese Williams Trust sold 200 shares of capital stock (minority interest), liquor license number RL–5877, business assets, inventory and stock in trade of Crystal Bar, Inc. to Cosmic, Inc. (buyer) under a written contract entitled "Purchase Agreement." The total purchase price was $225,000 payable $50,000 down with the balance of $205,000 to be paid by the assumption of $40,468.58 of the sellers' debts and the balance of $164,531.42 amortized monthly at 12 percent per annum for ten years.[1] The purchase agreement was characterized by the parties as an option to purchase.

The title paragraph provided in part as follows:

### IV.

TITLE:

Seller hereby agrees to and does hereby sell to Buyer, and Buyer does hereby agree to and does hereby purchase from Seller the described personal property, on the terms and conditions hereinafter set forth. It is agreed that if Buyer shall make payments and fulfill the covenants hereinafter mentioned on its part to be made and performed, Seller hereby covenants and agrees to convey and assure to Buyer, clear of all liens, encumbrances, and taxes whatsoever, except that as are to be paid by Buyer as hereinafter set forth in this Agreement, by

---

1. The amortization schedule dated 3/21/84 provided for a total principal of $166,482.80 with payments of $2,388.54 payable monthly commencing June 1, 1984.

good and sufficient Bill of Sale, properly executed, and by executing all documents required to effect such transfer by the Articles of Incorporation and By-Laws of Crystal Bar, Inc. and as required by the Laws of the State of South Dakota, personal property presently located in the County of Pennington, State of South Dakota, as hereinbefore described. Seller hereby covenants and warrants that there are or will be no undisclosed creditors within the purview of the South Dakota Bulk Sales Act at the time of Transfer of Possession and the Seller shall furnish a Bulk Sales Affidavit to such effect. The parties hereto expressly agree that this sale shall not be deemed complete until the final payment as provided for in Article Six (VI) hereof shall have been made and, prior to such final payment, this Agreement, in part, shall be construed as an Option to Purchase, the downpayment herein being designated by the parties as partial payment for said Option; that all payments of principal and interest hereunder are agreed between the parties to constitute the fair rental value for such property during the period of this Agreement; and, that all other payments, including but not limited to taxes, special assessments, and insurance, shall be deemed payments for such exclusive and irrevocable right and option to purchase.

The default provisions provided in part as follows:

### X.

ESCROW:

. . . . .

(d) In the event of a default by Buyer in the terms or conditions of this Agreement and the cancellation and termination of this Agreement by Seller as hereafter provided, said Agent [escrow agent] shall return the Stock Certificates, Bill of Sale and all other documents to Seller.

### XXIV.

DEFAULT:

Payment of all monies, whether principal or interest, taxes, assessments or impositions, Insurance Premiums, or any part thereof coming due hereunder by Buyer, and the performance of all covenants and conditions of this Agreement to be kept and performed by Buyer are conditions precedent to the performance by Seller, and this sale shall not be deemed complete until all such payments have been paid in full. . . .

(d) Payments theretofore made by Buyer pursuant to this Agreement shall be credited by Seller to the reasonable rental value of the property during the period Buyer has the use, enjoyment, and occupation of said property and to reimburse Seller for any alteration or damage to the property which may affect its merchantability or diminish its value, and any excess of such payments over such reasonable rental value, after payment of any and all costs and expenses incurred regaining possession of said property upon the Buyer's default, including attorney's fees and reimbursement to the Seller for alteration or damage which affects its merchantability or diminishes its value, shall be retained by Seller as liquidated damages for the breach of this Agreement and as payment for the exclusive and irrevocable right and option to purchase during the time this Agreement is in effect.

The purchase agreement was not perfected as a security agreement under South Dakota Codified Laws (SDCL), Chapter 57A–9 (secured transactions).

B. *The Assignment Agreement*

On December 18, 1984, purchaser Cosmic, as assignor, entered into an assignment with co-defendant Virgil Hauff (Hauff) as assignee, covering the property which was the subject to the prior purchase agreement. It was titled simply "Agreement."

The assignment price was $284,877.75 with certain specified obligations to be paid

or incurred [2] and the balance of $171,031.32 to be paid by Hauff agreeing to assume all obligations of Cosmic under the March 27, 1984 purchase agreement (agreed to be $159,174.41).

The stated purpose of the assignment agreement was as follows:

## II.

### PURPOSE:

The purpose of this agreement is to set forth the terms and conditions under which the assignor agrees to assign all of its right, title, interest, and obligation in a Purchase Agreement between Crystal Bar, Inc., and Cosmic, Inc., dated the 27th day of March, 1984, which said Purchase Agreement is attached hereto and incorporated herein as Exhibit A as if fully set out, and assignee agrees to accept the right, title, interest, and obligation under said Purchase Agreement. By virtue of this agreement, assignee agrees to purchase the Crystal Bar under the terms of Exhibit A and the terms of this Agreement.

In a similar manner to the original purchase agreement, the agreement (assignment) reserved title pending final payment. The provision as to title provided as follows:

## IV.

### TITLE:

Assignor hereby agrees to and does hereby assign to assignee and assignee does hereby agree to and does hereby accept from assignor all of assignor's interest in said property as existing under Exhibit A on the terms and conditions hereinafter set forth. Assignor represents that there currently is $159,174.42 owed on said contract and assignee assumes that amount under the terms of Exhibit A. It is agreed that if assignee shall make payments and fulfill the covenants hereinafter mentioned on its part to be made and performed, assignor hereby covenants and agrees to convey and assure to assignee, by good and sufficient Bill of Sale, properly executed, and by executing all documents required to effect such transfer all of assignor's interest in personal property presently located in the County of Pennington, State of South Dakota, as hereinbefore described. Assignor hereby covenants and warrants that there are or will be no undisclosed creditors within the purview of the South Dakota Bulk Sales Act at the time of Transfer of Possession and the Seller shall furnish a Bulk Sales Affidavit to such effect. The parties hereto expressly agree that this sale shall not be deemed complete until the final payment as provided for in this Agreement and, prior to such final payment, this Agreement, in part, shall be construed as an Option to Purchase, the downpayment herein being designated by the parties as partial payment for said Option, that all payments of principal and interest hereunder are agreed between the parties to constitute the fair rental value for such property during the period of this Agreement; and, that all other payments, concluding but not limited to taxes, special assessments, and insurance, shall be deemed payments for such exclusive and irrevocable right and option to purchase.

The default provision provided as follows:

## XXI.

### DEFAULT:

Payment of all monies, whether principal or interest, taxes, assessments or impositions, Insurance Premiums, or any part thereof coming due hereunder by assignee, and the performance of all covenants and conditions of this Agreement to be kept and performed by assignee are conditions precedent to the performance by assignor, and this assignment shall

---

**2.** January 1, 1955—$13,623.39 to pay named creditors; January 1, 1985—$28,501.62 to pay current accounts payable; promissory note plus interest due July 1, 1985, to Lamro, Inc., $15,300; promissory note plus interest due July 1, 1985, to Charlie Colombe—$46,303.00; January 30, 1985—$10,118.42 for payroll taxes.

not be deemed complete until all such payments have been paid in full....

(c) Payments theretofore made by assignee pursuant to this Agreement shall be credited by assignor to the reasonable rental value of the property during the period assignee has the use, enjoyment, and occupation of said property and to reimburse assignor for any alteration or damage to the property which may affect its merchantability or diminish its value, and any excess of such payments over such reasonable rental value, after payment of any and all costs and expenses incurred regaining possession of said property upon the assignee's default, including attorney's fees and reimbursement to the assignor for alteration or damage which affects its merchantability or diminishes its value, shall be retained by assignor as liquidated damages for the breach of this Agreement and as payment for the exclusive and irrevocable right and option to purchase during the time this Agreement and Exhibit A is in effect.

The assignment also was not perfected as a security agreement under SDCL 57A–9.

### C. *The Default*

Hauff defaulted by failing to make the payments of $2,388.54 due on the first day of August and September 1989. He was charged with other contractual violations as well.[3]

Notice of default was mailed to Hauff and received on September 6, 1989. The last payment of July 7, 1989, left a contract balance of $104,734.78 as shown by the amortization schedule. As of December 5, 1989, the total principal due was $105,444.26 plus accrued interest of $5,100.89 for a total delinquency of $110,545.15.[4]

### D. *The IRS Tax Liens*

Defendant IRS claims a lien upon the property described in the two agreements for personal income taxes due under Form 1040 of Virgil D. Hauff and Karen M. Hauff and for withholding and social security taxes due under Forms 940, 941 as follows:

| Date of Tax Lien | Taxpayer | Amount | Type of Tax | Date of Assessment | Date Recorded Document No. | |
|---|---|---|---|---|---|---|
| 8–5–88 | Virgil D. Karen M. Hauff | 67,238.59 | 1040 (1986) | 6–27–88 | 8–8–88 | (41449) |
| 4–27–89 | Virgil D. Karen M. Hauff | 23,601.34 | 1040 (1984) | 12–26–88 | 5–1–89 | (51627) |
| 10–13–89 | Virgil D. Karen M. Hauff | 23,711.34 | 1040 (1987) | 10–13–89 | 10–13–89 | (58212) |
| 10–13–89 | Virgil D. Hauff Lawyer Crystal Bar & Lounge | 16,330.14 | 940,941 (from 9–30–88 to 9–30–89) | 10–13–89 | 10–13–89 | (58213) |

### E. *Property Remaining After Default*

By reason of various isolated disposals of certain of the assets, there remains personal property of the estimated value of $10,000 to $20,000 and the South Dakota liquor on-sale license number RL–5877. The val-

---

**3.** Violation of the insurance clause and a sale of certain fixtures and furniture without the consent of the seller-assignee plaintiffs. (A previous default had been waived by the plaintiffs.)

**4.** Letter from First Bank Systems to Bob Martin (attorney for plaintiffs) dated December 5, 1989.

ue represented by the license, estimated to be $75,000 to $100,000, is the major value remaining. IRS seeks to satisfy a portion or all of its lien amounts by its levy upon all of this property, but particularly upon the liquor license. The license must be the subject of renewal application each year and has been kept alive by successive applications.[5]

## DISCUSSION

■ In the application of the Federal Tax Lien Act, state law controls in determining the nature of the legal interest which the taxpayer had in the property. *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *United States v. Trigg*, 465 F.2d 1264, 1267 (8th Cir.1972).

■ The Federal Tax Lien Act provides that a federal tax lien attaches to all property and rights to property, whether real or personal, belonging to a taxpayer:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.

It is further provided as follows:

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

26 U.S.C. § 6322.

Accordingly, the IRS tax liens filed against Virgil D. Hauff and Karen M. Hauff arose at the time of their assessment (June 27, 1988; December 26, 1988; October 13, 1989).

■ South Dakota adopted the Uniform Commercial Code (UCC) by Chapter 150 of Session Laws of 1966, codified at SDCL 57A–1–101 *et seq.*

SDCL 57A–9–301 pertains to the priority of a lien creditor over an unperfected security interest, by providing in part as follows:

(1) Except as provided in subsection (2), an unperfected security interest is subordinate to the rights of:

. . . . .

(b) A person who becomes a lien creditor before the security interest is perfected; ...

(3) A "lien creditor means a creditor who has acquired a lien on the property involved by attachment, levy, or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment.

SDCL 57A–9–302 provides that a financing statement must be filed to perfect all security interests (with certain named exceptions, none of which apply to this case).

(1) A financing statement must be filed to perfect all security interests except the following:

(a) A security interest in collateral in possession of the secured party under § 57A–9–305;

(b) A security interest temporarily perfected in instruments or documents without proper delivery under § 57A–9–304 or in proceeds for a twenty-day period under § 57A–9–306;

(c) A security interest created by an assignment of a beneficial interest in a trust or a decedent's estate;

(d) A purchase money security interest in consumer goods; but filing is required for a motor vehicle required to be registered; and fixture filing is re-

**5.** The plaintiff Reese M. Williams protected the license value by renewal for the years 1990 and 1991 at a cost of $3,000. The Court understands that an agreement between Williams and the IRS protects his renewal fees in the event the IRS is successful.

quired for priority over conflicting interests in fixtures to the extent provided in § 57A–9–313;

(e) An assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor;

(f) A security interest of a collecting bank (§ 57A–4–208) or in securities (§ 57A–8–321) or arising under the chapter on sales (see § 57A–9–113) or covered in subsection (3) of this section;

(g) An assignment for the benefit of all the creditors of the transferor, and subsequent transfers by the assignee thereunder.

(2) If a secured party assigns a perfected security interest, no filing under this chapter is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor.

SDCL 57A–1–201(37) defines a security interest as follows:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer ... is limited in effect to a reservation of a "security interest."

In South Dakota, a liquor license is considered "property." *Rushmore State Bank v. Kurylas, Inc.,* 424 N.W.2d 649 (S.D.1988). Under the UCC it can become a general intangible subject to a security interest in favor of a creditor. *Id.* at 654. SDCL 57A–9–106 provides that, " 'General intangibles' [6] means any personal property ... other than goods, accounts, chattel paper, documents, instruments and money."

See also *In re O'Neill's Shannon Village,* 750 F.2d 679, 682 (8th Cir.1984).

Under SDCL 57A–9–302, a security interest in a general intangible must be filed in order to protect it from the claims of third parties. Accordingly, since plaintiff Crystal Bar, Inc. failed to properly file the security interest created by the purchase agreement of March 27, 1984, it had only an unperfected interest in the license. Since an unperfected security interest is subordinate to the rights of a third party (in this case the IRS), which became a lien creditor before the security interest was perfected, the IRS liens are entitled to first priority.

This Court is of the opinion that *Trigg* is dispositive of this case. Plaintiffs attempt to distinguish *Trigg* by pointing to its language requiring the United States to not have knowledge of the security interest. They assert that if such knowledge exists, the IRS lien is subordinate. At the time the *Trigg* case was decided, knowledge was an important factor to be considered. However, in 1972, section 9–301[7] of the UCC was amended to withdraw the requirement that the lien creditor not have knowledge of the security interest in order to take priority over the security interest. South Dakota followed suit in SDCL § 57A–9–301(1)(b). In the Draftsmen's Statement of Reasons for 1972 Changes in Official Text it states that "[k]nowledge of the security interest will no longer subordinate the lien creditor to the unfiled security interest." U.C.C.Rep.Serv.Code Index (Callaghan) § 9301 (1977).

Plaintiffs urge the Court to ignore *Trigg,* stating simply, "This case is not a UCC case." Plaintiffs' objection to the United States cross motion for summary judgment, p. 4. This Court finds, however, that

---

**6.** The Court is not unmindful of the case of *In re Roberts,* 358 F.Supp. 392 (D.S.D.1973); however, *Roberts* was not decided in the context of the South Dakota UCC. *See Kurylas,* 424 N.W.2d at 655 n. 8.

**7.** Section 9–301. Persons Who Take Priority Over Unperfected Security Interests; *Rights of* "Lien Creditor".

(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

.   .   .   .   .

(b) a person who becomes a lien creditor [without knowledge of the security interest and] before [it] *the security interest* is perfected; (Bracketed portions deleted; underlined portions added.)

the UCC is indeed exactly what this case is all about.

The Seventh Circuit in *Dragstrem v. Obermeyer*, 549 F.2d 20 (7th Cir.1977), held that a security interest need not be perfected under the UCC in order to be protected against a subsequent judgment lien under section 6323(h)(1) of the Federal Tax Lien Act. *Dragstrem* reviews the Federal Tax Lien Act and provides somewhat of an historical perspective to this problem. *Dragstrem* notwithstanding, it is this Court's opinion that *Trigg* controls. The "bottom line" is that plaintiffs needed only to perfect their security interest to have been protected. For perhaps their own reasons the plaintiffs chose not to do so.

A teaching underpinning of the UCC is that the responsibility to establish the priority of a security interest is placed upon the lender. The following is an observation: "Interests in property rise and fall according to perfection or nonperfection. The penalties for failure to perfect make for lenders' nightmares and the gleam in lien creditors' eyes. When properly accomplished, however, perfection is the source of great confidence: comfort in absolutism." Sanford, *Debtor's Rights in Collateral as a Requirement for Attachment of a Security Interest Under the Uniform Commercial Code*, 26 S.D.L.Rev. 163, 164 (1981).

Plaintiffs' position is that since the purchase agreement was labeled an option (paragraph IV), it did not thereby give rise to a "security interest." Calling a security interest an option does not make it an option. The location of the title is immaterial. SDCL 57A-9-202 provides: "Each provision of this chapter with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor."

The clear intent of the law of South Dakota as set forth in Chapter 57A-9 is to bring contracts, such as is here under consideration, under the umbrella of a "security interest."

Plaintiffs cite and rely upon the case of *Gauvey v. United States*, 291 F.2d 42 (8th Cir.1961), which upheld the priority of a prior unfiled conditional sales contract over a subsequent file tax lien. In view of the enactment of the UCC by South Dakota legislature in 1966, the Court deems *Gauvey* as not controlling.

### UNITED STATES' MOTION FOR SUMMARY JUDGMENT AGAINST REMAINING DEFENDANTS

The United States has before this Court its motion of January 2, 1991, against the remaining defendants Mary K. Williams, Ann R. Williams, William D. Fish, Norwest Capital Management & Trust Co., Sam Marras, and Joe Crawford for summary judgment. It asserts the priority of its lien as against the remaining defendants.

The only remaining defendants responding to the government's motion are Sam Marras and Ann R. Williams.

Sam Marras asserts a landlord's lien under SDCL 44-11-1.[8]

Ann R. Williams asserts an interest in the stock of the plaintiff Crystal Bar, Inc., by virtue of an order issued out of the Circuit Court, Seventh Judicial Circuit, Pennington County, dated August 22, 1984.

Neither Sam Marras nor Ann R. Williams have responded with a memorandum brief as required by Rule 4, Subdivision 8, of the Rules of Practice of the United States District Court of the District of South Dakota.

Accordingly, all of the remaining defendants are in default under the government's motion for summary judgment.

---

**8.** SDCL 44-11-1. Mechanics', laborers' and materialmen's liens on personal property—Extent of lien—Agreed price. Any person who, at the request or consent of the owner or person lawfully in possession, shall furnish any services, skill, labor, materials, parts, accessories, supplies, or facilities for the alteration, repair, replacement of parts, storage, keeping, mainte-nance, and preservation of any personal property shall have a lien thereon, dependent on possession, or notice as hereinafter provided for his reasonable charge for any or all of the same furnished for said personal property, or if the same be furnished pursuant to an agreed price with the owner for the amount of said agreed price.

## ORDER

IT IS ORDERED that plaintiffs' motion for summary judgment be and the same is hereby denied.

IT IS FURTHER ORDERED that defendant United States' cross motion for summary judgment against the plaintiffs is granted. The United States is entitled to priority under its IRS liens to all of the assets remaining, including the South Dakota liquor license.

IT IS FURTHER ORDERED that the United States shall be granted summary judgment against the defendants Ann R. Williams, Mary K. Williams, William D. Fish, Norwest Capital Management & Trust Co., Sam Marras, and Joe Crawford.